IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,        )
                                 )
                    Plaintiff,   )
                                 )
        v.                       )        Case No. 08-20150-02-JWL
                                 )
DEBORAH JACKSON,                 )
                                 )
                    Defendant.   )
                                 )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. # 147).[1]  For the reasons set forth below, the Court **denies** the motion.

I.      **Background**

In 2009, defendant pleaded guilty to one count of a conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 846, and one count of using a firearm during a drug trafficking crime pursuant to 18 U.S.C. § 924(c)(1).   In 2010, the Court sentenced defendant to a term of life imprisonment, in accordance with the statutory minimum sentence that applied by virtue

_____

[1] This case was reassigned to the undersigned judge on February 21, 2020.

of two prior convictions pursuant to 21 U.S.C. § 851. Defendant has served approximately 122 months, and she is presently incarcerated at Waseca FCI in Minnesota.

On April 24, 2020, defendant filed the instant motion through counsel. The Government filed a brief in opposition, and defendant filed a reply brief. After a telephone status conference, defendant was granted leave to submit evidence and another brief. The Government subsequently filed a supplemental brief in which it argues that the applicable exhaustion requirement has not been satisfied. Defendant was then granted leave to file – and did file – another brief responding to the Government's new argument. The motion is now ripe for ruling.

## II.   Exhaustion

Defendant seeks immediate release from prison under 18 U.S.C. § 3582(c)(1)(A). That statute allows a defendant to bring a motion for reduction of a term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See id.*

In her motion, defendant argued that this requirement had been satisfied because 30 days had lapsed since her March 23, 2020, request to the warden. In its initial response, the Government conceded that the exhaustion requirement had been met here. In its latest brief, however, the Government insists that its concession was in error and that the

requirement has not been satisfied because defendant has not "fully exhausted all administrative rights to appeal" the warden's denial in this case. *See id.*

The Court rejects defendant's argument. Nowhere in its latest brief has the Government addressed the alternative prong of the statute, which allows a defendant to file her own motion after "the lapse of 30 days from the receipt of such a request by the warden." *See id.* The Government has not disputed that defendant's warden received her request at least 30 days before defendant filed her motion. Nor has the Government suggested any reason why the fact of that timing should not satisfy the plain language of the statute. The Court thus concludes that it has jurisdiction to consider defendant's motion.

### III.   <u>Analysis</u>

Defendant argues that relief is warranted here essentially for two reasons: the COVID-19 coronavirus pandemic; and the disparity between her life sentence and the sentence she would likely have received if she had been sentenced under the statutes and guidelines in effect today. Section 3582(c)(1)(A) provides that a court may reduce a term of imprisonment for "extraordinary and compelling reasons." *See id.* The moving defendant bears the burden of establishing that such a "compassionate release" is warranted under the statute. *See, e.g.*, *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (defendant bears burden to show reduction is warranted under Section 3582(c)(2)); *United States v. Bright*, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) ("extraordinary and compelling" standard imposes a heavy burden on a defendant seeking relief under Section

3582(c)(1)(A)).  A court exercises its discretion in ruling on such a motion.  *See United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (reviewing denial for abuse of discretion); *United States v. Saldana*, 2020 WL 1486892, at *2 n.4 (10th Cir. Mar. 26, 2020) (unpub. op.) (same) (citing *United States v. Piper*, 839 F.3d 1261, 1265 (10th Cir. 2016)).

A.  *Determination Under the Catchall Provision of 1B1.13*

The Government argues that the reasons argued by defendant are not sufficient for relief under the statute as a matter of law because they are not included explicitly in the applicable policy statement from the United States Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A) provides that a court may reduce a sentence if it finds both (a) that extraordinary and compelling reasons warrant the reduction and (b) "that such a reduction is consistent with applicable policy statement issued by the Sentencing Commission."  *See id.*  In addition, 28 U.S.C. § 994(t) provides that "[t]he [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  *See id.*  The Sentencing Commission responded to that mandate by promulgating the policy statement found at U.S.S.G. § 1B1.13.

In Section 1B1.13, the Commission added the requirement that the defendant not be a danger to the safety of another person or the community.  *See id.*  In addition, in Application Note 1 to the statement, the Commission set forth four circumstances (in subdivisions (A) through (D)) under which "extraordinary and compelling reasons" may

4

exist.  *See id.* applic. note 1.  Subdivisions (B) and (C) depend on the defendant's age and family circumstances, and they are not applicable here.  *See id.*  Subdivision (A) sets forth the following qualifying medical condition:  the defendant is either (i) suffering from a terminal illness; or (ii) suffering from a serious physical or medical condition that substantially diminishes her ability to provide self-care within the prison environment from which she is not expected to recover.  *See id.*  Defendant has not argued that she can satisfy subdivision (A), however, and she has not shown either that she has a terminal illness or that her ability to provide self-care is substantially diminished.

That leaves subdivision (D), known as the "catchall" provision, which in its present form provides as follows:

> **(D)  Other Reasons. –** As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*See id.*  Subdivision (D) thus provides that circumstances other than those listed in subdivisions (A) through (C) may be sufficient to warrant relief, as determined by the Bureau of Prisons (BOP).  As the Government notes, the BOP has made no such determination in this case.  The issue therefore becomes whether the Court may make its own determination under subdivision (D) that other circumstances constitute an extraordinary and compelling reasons for relief under Section 3582(c)(1)(A).  The Government argues that it may not, but the Court disagrees.

Previously, Section 3582(c)(1)(A) allowed for compassionate release only upon motion by the BOP.  The First Step Act of 2018 (FSA) amended the statute to its present

form, which also allows the defendant to file the motion (after satisfying the exhaustion requirement).  *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).  The Sentencing Commission's policy statement has not been updated to reflect the statutory amendment; in fact, the statement's application notes still require a motion by the BOP. *See* U.S.S.G. § 1B1.13 applic. note 4.

A few district courts have ruled that only the BOP may rely on the catchall provision.  For instance, in *United States v. Lynn*, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019), the court reasoned as follows:  Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the FSA did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.  *See id.* at *2-4.  The overwhelming majority of courts, however, have rejected that reasoning and concluded that a court may make the necessary determination that other circumstances warrant relief under this statute.  *See, e.g.*, *United States v. Redd*, 2020 WL 1248493, at *6-8 & n.18 (E.D. Va. Mar. 16, 2020); *United States v. O'Bryan*, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, 2020 WL 806121, *1-4 (D. Utah Feb. 18, 2020), *appeal filed* (10th Cir. May 12, 2020); *United States v. Brown*, 411 F. Supp. 3d 446, 449-51 (S.D. Iowa 2019).  This Court is persuaded by the reasoning of these courts in the clear majority.  The present policy statement assumes that only motions by the BOP are permitted, in accordance with the previous version of the statute, but Congress changed that scheme in enacting the FSA.  In including the catchall

provision, the Sentencing Commission clearly intended that the necessary "extraordinary and compelling reasons" not be limited to the examples explicitly set forth in subdivisions (A) through (C) (although those circumstances should be instructive).  It would undermine the change made by Congress in the FSA if subdivision (D)'s catchall provision did not also apply in the case of a motion by a defendant.  Thus, for purposes of this motion, the Court will assume that it is not limited to the circumstances set forth in subdivisions (A) through (C).[2]

### B.   *Sentencing Disparity*

Defendant argues that relief is warranted at least in part because of the disparity between her life sentence and the sentence she would have received under the statutes and guidelines that are in effect today.  At her sentencing, the Court determined her applicable guideline range on the drug count to be 188 to 235 months (2009 Manual, base offense level of 38, less three levels for acceptance of responsibility, criminal history category II).  Two prior convictions, however, gave her a mandatory minimum sentence of life imprisonment on that count.  The gun count required a consecutive minimum sentence of five years.  The FSA, however, changed how prior convictions affected certain mandatory minimum sentences, and if sentenced today, defendant would be subject to a mandatory minimum of only ten years on the drug conviction, instead of life imprisonment.  Moreover,

---

[2] Some courts have concluded that because Section 1B1.13 presumes a motion by the BOP and has not been amended, there no longer is any applicable policy statement with which to be consistent.  *See Brown*, 411 F. Supp. 3d at 449-50 (citing courts that have so concluded).  The Court need not decide that issue, as such a conclusion here would also allow the Court to consider all circumstances, and thus would not change the result.

under the latest version of the sentencing guidelines, her sentencing range would be 151 to 188 months. The additional five-year minimum on the gun conviction would mean that a low-end sentence would be 211 months if she were sentenced today for the same convictions.

Defendant argues further that her sentence would likely be even lower if she were sentenced today. For instance, if defendant received a previously-unavailable minor-role adjustment, her range would drop to 87 to 108 months on the drug charge, and a *Booker* variance could lower the range even further. Defendant also argues that the Government might drop the gun charge in exchange for her plea of guilty to the drug charge. Thus, defendant argues that today she might receive only the ten-year statutory minimum, and she has already served that length of time. Defendant also notes that her co-defendant son (whom she argues she was merely aiding in his criminal activities) received a 156-month sentence. Even if the Court were inclined to grant relief based on a disparity in sentencing, however, it would reject these further arguments. This would not be the appropriate vehicle to re-litigate an adjustment such as defendant's role in the offense. Moreover, there is no reason to believe that defendant would not also face sentencing on the gun count – the Government did include that count in the plea offer that defendant accepted, and defendant attempted to withdraw that plea at any rate (belatedly claiming innocence). Thus, the Court will only consider whether relief could be based on a disparity between defendant's life

sentence and a possible sentence of 211 months if given the benefit of the FSA's statutory change and amendments to the guidelines.[3]

The Government argues that, even if the Court may consider other reasons under the catchall provision of subdivision (D), those other reasons should not include such a sentencing disparity because the changes on which defendant relies were not made retroactive by Congress (even though Congress has made other such changes retroactive). The Court agrees.

Some courts have considered a change in sentencing law in granting relief under Section 3582(c)(1)(A), but in only a few such cases (the Court has located ten) has the court addressed this argument that Congress did not make the relied-upon change retroactive. In some of those cases, the court has merely cited or quoted other cases and stated that it agrees with that reasoning. In five cases, the court has offered some reasoning for rejecting the Government's argument concerning the lack of retroactivity. Most cited and relied on is *Maumau*, in which the court addressed the argument that a change to the stacking of offenses under 18 U.S.C. § 924(c) was not made retroactive, as follows:

> The United States objects to this conclusion because, it notes, Congress could have made its changes to § 924(c) retroactive but it chose not to do so. While this is a relevant consideration, it ultimately has little bearing on the court's conclusion. It is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even

---

[3] In fact, a 211-month sentence might be considered generous – at sentencing, because a life sentence was mandatory, the Government did not oppose a three-level adjustment for acceptance of responsibility for purposes of determining the guideline range on the gun charge; but if sentenced under a ten-year mandatory minimum, defendant would not likely have received that adjustment because she had professed her innocence while trying (unsuccessfully) to withdraw her guilty plea.

while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis.

*See Maumau*, 2020 WL 806121, at *7 (emphasis in original).  In *O'Bryan*, the court quoted this passage from *Maumau* after stating this reasoning:

> However, this [lack of retroactivity] simply establishes that a defendant sentenced before the FSA is not *automatically* entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A).

*See O'Bryan*, 2020 WL 869475, at *1 (emphasis in original).  In *Redd*, the court stated:

> Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

*See Redd*, 2020 WL 1248493, at *9.   In *United States v. Haynes*, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020), the court, after quoting *O'Bryan*, stated:

> Indeed, this court would add:  the Congressional decision not to make the § 924(c) change retroactive spares the courts an avalanche of applications and inevitable re-sentencings, no doubt in many cases that do not feature the same grave characteristics presented here.

*See id.* at *16.  Finally, in *United States v. Gadson*, 2020 WL 2079100 (D.S.C. Apr. 30, 2020), the court stated:

> Although the "clarification" to § 924(c) limiting stacking was not made retroactive by Congress, this does not mean the court cannot consider it on an individual basis.  What it does mean, however, is that Congress did not intend the sentencing disparity between defendants sentenced before and after the § 924(c) amendment to constitute a sufficient basis on its own to grant a reduction in sentence.

*See id.* at * 2 (citation omitted).

The Court is not persuaded to follow the reasoning of these courts on this issue. First, all ten of these cases involved FSA's amendment of Section 924's "stacking" provisions, and some of these courts relied on the fact that in the FSA, the amendment was titled a "clarification," meaning Congress had always intended the statute to apply as amended. *See* Pub. L. No. 115-391, § 403, 132 Stat. at 5221; *see also United States v. Bryant*, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020) (citing "clarification"); *United States v. Decator*, 2020 WL 1676219, at *4 (D. Md. Apr. 6, 2020) (same); *Gadson*, 2020 WL 2079100, at *2 (noting the FSA's "clarification" of Section 924); *O'Bryan*, 2020 WL 869475, at *1 (same). That justification does not apply here, as defendant in the instant case relies on other changes, including the FSA's change to the consideration of prior convictions for the mandatory minimum. In the FSA, that amendment is not called a "clarification", but is titled "Reduce and Restrict Enhanced Sentencing for prior Drug Felonies." *See* Pub. L. No. 115-391, § 401, 132 Stat. at 5220.

Second, the Court disagrees with the rationale by the courts quoted above that Congress, in deciding not to make a change in the FSA retroactive, may have intended that some but not all defendants could get the benefit of change, such that the change could effectively be given retroactive effect on a case-by-case basis. The fault in that reasoning arises from the fact that in Section 404 of the FSA, Congress did just that explicitly – it allowed courts *in their discretion* to resentence defendants as if the Fair Sentencing Act of 2010 had been in effect at sentencing. *See* Pub. L. No. 115-391, § 404, 132 Stat. at 5222. Thus, in the FSA, Congress explicitly provided for case-by-case retroactivity when it intended to do so. The fact that there are no similar retroactivity provisions for other

11

changes to the statutes or the sentencing guidelines on which defendant relies leads the

Court to conclude that Congress did not intend that such changes be retroactively applied,

either for all defendants or for some defendants. Thus, at least in a case that does not

involve Section 924 stacking, granting relief under Section 3582(c)(1)(A) based on non-

retroactive changes in sentencing law would not be consistent with the FSA, the statute

that created this avenue of relief. The Court is mindful of the harsh sentence that defendant

received here and the large difference between that sentence and the one she likely would

receive today, but the Court simply is not empowered to rewrite the law that Congress has

passed and substitute its policy judgment for that of the Legislative Branch.[4]

### C.   *Risk of Coronavirus Infection*

Defendant also bases her request for relief on an elevated risk of harm from the

coronavirus pandemic. Defendant argues that precautions against infection cannot be as

effective in a prison environment. She also relies on a declaration by a medical expert who,

after reviewing some of defendant's medical records, has reached the following

conclusion:

> In sum, based on my understanding of the COVID-19 virus, [defendant] is
> in the highest risk category as a result of her age [61], the immunosuppression
> from her diagnosed conditions, structural lung damage from her previous
> infections, her undiagnosed condition of diabetes, and the medications she
> takes to address these conditions.

The expert did not examine defendant.

---

[4] Even if the Court did consider a disparity between defendant's life sentence and
211-month sentence, it would still not find an extraordinary and compelling reason for
defendant's immediate release in this case, as defendant would remain many years from
release even under the shorter term.

Despite this evidence, the Court concludes in its discretion that defendant has not met her burden to show that extraordinary and compelling circumstances warrant her immediate release from prison.  Although defendant's risk of harm in the event that she contracts the virus may be higher than for some other inmates, she receives treatment for her medical issues, and she is not presently suffering any particular distress or debilitation. Nor has defendant shown that she faces a relatively high risk of contracting the virus in her prison.  The Bureau of Prisons has implemented measures in Waseca and in other facilities to control outbreaks, particularly with respect to higher-risk inmates.  Defendant has not submitted any evidence to show that conditions or particular measures in effect at Waseca are not effective or increase the risk of harm from the virus.  Most significantly, and as conceded by defendant, there has not been a single reported case of this virus among inmates and staff at Waseca.  *See* www.bop.gov/coronavirus.  Defendant has simply not shown that she bears a relatively high risk of serious medical harm, and the Court is not prepared to order the release of any and all inmates, solely because of the pandemic, in the absence of such a particularized risk.

In addition, this is not a case in which the inmate has only a short time left to serve. Defendant was sentenced to life imprisonment, and whatever this Court's opinion of the equity of such a sentence, the Government maintains a valid public interest in incarcerating her in accordance with the terms of her lawful sentence.

Accordingly, the Court in its discretion concludes that defendant has not shown that extraordinary and compelling reasons warrant her release from prison.  The Court therefore denies the instant motion for relief under Section 3582(c)(1)(A).

13

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. # 147) is hereby **denied**.

IT IS SO ORDERED.

Dated this 29th day of May, 2020, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge